UNITED STATES of America, Appellee,

v.

Brenda L. JACOBS, Appellant.

No. Cr. 92–116.

United States District Court,
D. South Carolina,
Columbia Division.

March 3, 1993.

Eric Ruschky, Asst. U.S. Atty., Columbia, SC, for appellee.

Susan Z. Hitt, Asst. Federal Public Defender, Columbia, SC, for appellant.

## OPINION

SHEDD, District Judge.

■ This matter is before the Court on the Government's appeal of a sentence imposed by the Honorable E.S. Swearingen, United States Magistrate Judge, upon the defendant, Brenda Jacobs. Jacobs was charged with and pled guilty to possession of marijuana in violation of 21 U.S.C. § 844 and driving under the influence, second offense, in violation of South Carolina Code section 56–5–2930, assimilated by 18 U.S.C. § 13 (the Assimilative Crimes Act).[1] The Government

objects to the magistrate judge's decision not to impose the minimum fine for driving under the influence, second offense, as required by state law.[2] The Court has carefully reviewed the record and finds that the magistrate judge's decision was in error. The Government, however, failed to object to the sentence at the sentencing hearing, and the sentence does not result in the denial of fundamental justice. Accordingly, the Court will dispense with oral argument[3] and affirm the sentence.

### I

On October 24, 1990, appellant, while driving an automobile in the Fort Jackson district of Columbia, South Carolina, was stopped by a Military Police officer who spotted her driving erratically. As a result of the officer's investigation, Jacobs was charged in a five-count Information. On June 10, 1991, she appeared with Assistant Federal Public Defender Susan Z. Hitt in Columbia, South Carolina, and entered a plea of guilty to possession of marijuana in violation of 21 U.S.C. § 844, and driving under the influence, second offense ("second offense DUI"), in violation of South Carolina Code section 56–5–2930, assimilated by the Assimilative Crimes Act. The Government dismissed the remaining charges.

After conducting a sentencing hearing on January 27, 1992, the magistrate judge applied the guidelines promulgated by the United States Sentencing Commission ("the Guidelines") in determining the sentence to be imposed. Although the state statute pursuant to which Jacobs was sentenced requires a fine of at least $1,000, the magistrate judge, pursuant to the Guidelines, determined that Jacobs had no ability to pay and imposed no fine. Instead, he sentenced Jacobs to three years probation on the condition that Jacobs perform eighty hours of

---

**1.** The Assimilative Crimes Act provides that acts or omissions which are not prohibited by federal law are instead controlled by the surrounding state's law on land within the special maritime and territorial jurisdiction of the United States. 18 U.S.C. § 13(a). The Act assimilates for federal prosecutions a state's substantive law, such as the elements of a crime and terms of punishment, but generally does not use state procedural law or rules of evidence. *United States v. Price,*

812 F.2d 174, 175 (4th Cir.1987); *Kay v. United States,* 255 F.2d 476, 479 (4th Cir.), *cert. denied,* 358 U.S. 825, 79 S.Ct. 42, 3 L.Ed.2d 65 (1958).

**2.** The Government does not appeal the sentence imposed for possession of marijuana.

**3.** *See United States v. Darst,* 726 F.Supp. 286 (D.Kan.1989).

community service and participate in a program of drug testing and treatment, to be released from the program when determined suitable by the Probation Office. It is the magistrate judge's decision not to impose a fine that the Government appeals.

## II

The standard of review for this appeal is governed by Rule 58(g)(2) of the Federal Rules of Criminal Procedure.[4] Pursuant to Rule 58(g)(2)(D), a defendant who is convicted by a magistrate judge is not entitled to a trial de novo by a judge of the district court. Instead, the scope of the appeal is the same as an appeal from a judgment of the district court to the court of appeals. On an appeal from a magistrate judge to the district court, the record consists of "the original papers and exhibits in the case together with any transcript, tape, or other recording of the proceedings and a certified copy of the docket entries...." Fed.R.Crim.P. 58(g)(2)(C).

In support of its contention that the magistrate judge erred in deciding not to impose a fine, the Government first argues that in imposing sentences for violations of state law which are encompassed by the Assimilative Crimes Act, federal courts are bound by the minimum and maximum fines provided by the pertinent state statute. The Government then suggests, presumably as an alternative argument, that the magistrate judge erred in finding that Jacobs was unable to pay a fine. The magistrate judge based his decision to impose no fine on his interpretation of the Guidelines. The Court "review[s] a question involving the legal interpretation of Guidelines terminology and the application of that terminology to a particular set of facts de novo, as a matter of law." *United States v. Wessells*, 936 F.2d 165, 168 (4th Cir.1991).

## III

■ This case involves the interaction of the Guidelines with the Assimilative Crimes

Act. The Guidelines, promulgated pursuant to the Sentencing Reform Act of 1984, are designed to achieve greater uniformity in the sentencing of federal crimes. *United States v. Garcia*, 893 F.2d 250, 253 (10th Cir.1989), *cert. denied* 494 U.S. 1070, 110 S.Ct. 1792, 108 L.Ed.2d 793 (1990). The Assimilative Crimes Act, which "fills in gaps in federal criminal law by providing a set of criminal laws for federal enclaves," is designed "to provide a method of punishing a crime committed on government [enclaves] in the way and to the extent that it would have been punishable if committed within the surrounding jurisdiction." *Id.*

The Guidelines' sentencing range for a state law crime encompassed by the Assimilative Crimes Act, however, often varies significantly from the sentencing range established by the underlying state statute. In such instances, the Guideline's policy of federal sentencing uniformity conflicts with the Assimilative Crimes Act's policy of intrastate sentencing uniformity. The Fourth Circuit has resolved this conflict by holding that "the 'like punishment' requirement of the Assimilative Crimes Act mandates that the federal court sentences for assimilated crimes must fall within the minimum and maximum terms established by state law, and that within this range of discretion federal judges should apply the Sentencing Guidelines to the extent possible." *United States v. Young*, 916 F.2d 147, 150 (4th Cir.1990).

In determining this appeal, therefore, the Court must first ascertain the minimum fine established by state law for the offense at issue. Generally, South Carolina's circuit judges "may, in their discretion, suspend sentences imposed by them except in cases of felony upon such terms and upon such conditions as in their judgment may be fit and proper." S.C. Code Ann. § 17–25–100 (Law. Co-op.1976).[5] Moreover, circuit judges may

---

4. Rule 58 is largely a restatement of the Rules of Procedure for the Trial of Misdemeanors before United States Magistrates, which were abrogated effective December 1, 1990. Rule 58 is not intended to alter the method in which an appeal from a petty offense was handled under the former rules. *See* Fed.R.Crim.P. 58 advisory committee's note.

5. The South Carolina Code does not define the term "sentence." As used in the Code, however, the term clearly applies to both incarceration and fines. For example, the Code provides that "[i]n cases of legal conviction when no punishment is provided by statute the court shall award such sentence as is conformable to the common usage and practice in this State...." S.C.Code

suspend felony sentences, except for crimes punishable by death or life imprisonment. *Id.* § 24–21–410 (Law. Co-op.1989). Thus in most instances, a sentence imposed pursuant to South Carolina statutes may be suspended.

The statute pursuant to which Jacobs was sentenced, however, clearly states that second offense DUI is punishable by either imprisonment or community service and "[b]y a fine of not less than two thousand dollars nor more than five thousand dollars.... However, the fine imposed by this item may not be suspended in an amount less than one thousand dollars." *Id.* § 56–5–2940(2) (Law. Co-op.1991). At first glance, it might seem that this provision conflicts with the statutes allowing a circuit judge to suspend any sentence other than one for crimes punishable by death or life imprisonment.

Application of the traditional rules of statutory construction, however, resolves any perceived conflict. As noted by the Supreme Court, "[a] general statutory rule usually does not govern unless there is no more specific rule." *Green v. Bock Laundry Mach. Co.,* 490 U.S. 504, 524, 109 S.Ct. 1981, 1992, 104 L.Ed.2d 557 (1989). Moreover, "a statute must, if possible, be construed in such fashion that every word has some operative effect." *United States v. Nordic Village, Inc.,* —— U.S. ——, ——, 112 S.Ct. 1011, 1015, 117 L.Ed.2d 181 (1992). Hence the general provision that circuit judges may suspend most sentences must give way to the more specific prohibition against imposing a fine of less than $1,000 upon a defendant convicted of second offense DUI. Moreover, ruling that section 17–25–100 permits a sentence of less than $1,000 in this case would render meaningless the prohibition against such suspensions embodied in section 56–5–2940(2). Ruling that section 17–25–100 does not apply in this case, on the other hand, simply recognizes that in certain situations, the South Carolina legislature has provided that the mandatory minimum sentence cannot be suspended.

Ann. § 17–25–30. The South Carolina Supreme Court has held that "the sentence to be imposed [pursuant to this statute] ... may be either by

The Court, therefore, finds that under South Carolina law, a defendant convicted of second offense DUI must be fined at least $1,000. Pursuant to the Assimilative Crimes Act and the Fourth Circuit's decision in *Young,* the magistrate judge should have imposed a fine of at least $1,000 upon Jacobs. The Court, therefore, finds that the magistrate judge erred in deciding to impose no fine upon Jacobs.

## IV

■ The Court's finding that the magistrate judge erred, however, does not end the inquiry. At the sentencing hearing, the Government raised no objection to the sentence imposed upon Jacobs. In light of the Government's failure to object, the Court must affirm the sentence unless it finds plain error. *See United States v. Fant,* 974 F.2d 559, 565 (4th Cir.1992); *United States v. Davis,* 954 F.2d 182, 187 (4th Cir.1992); *United States v. The Barge Shamrock,* 635 F.2d 1108, 1111 (4th Cir.1980), *cert. denied* 454 U.S. 830, 102 S.Ct. 125, 70 L.Ed.2d 107 (1981); Fed.R.Crim.P. 52. The Court, therefore, will overturn Jacobs' sentence only "if the error is 'plain' and if [a] refusal to consider such would result in the denial of fundamental justice." *Stewart v. Hall,* 770 F.2d 1267, 1271 (4th Cir.1985). *Accord Fant,.* 974 F.2d at 565; *Davis,* 954 F.2d at 187; *Barge Shamrock,* 635 F.2d at 1111.

The Fourth Circuit has not decided whether, in the absence of a contemporaneous objection by the Government, the imposition of a sentence which falls below the statutory minimum sentence is plain error requiring reversal. Other circuits, however, have addressed the issue and have reached conflicting conclusions. The First Circuit held that "[t]he imposition of a term of imprisonment less than the minimum mandated by Congress affects 'substantial rights' and, therefore, is subject to 'plain error' review notwithstanding the absence of contemporaneous objection." *United States v. Rodriguez,* 938 F.2d 319, 322 (1st Cir.1991).

fine or imprisonment or both." *State v. Fogle,* 256 S.C. 149, 181 S.E.2d 483, 484 (1971); *State v. Hill,* 254 S.C. 321, 175 S.E.2d 227, 232 (1970).

The Fifth Circuit, on the other hand, has refused to overturn a sentence that fell below the minimum sentence established by the Guidelines. *United States v. Garcia–Pillado,* 898 F.2d 36, 39 (5th Cir.1990). The *Garcia–Pillado* court stated that it was "not convinced that the failure to consider [the error] will result in manifest injustice," noting that "[i]f it were so important that [the defendant] receive a longer sentence, the government would surely have said something about it below, if indeed nothing more than to urge the district court to sentence at the top of the guideline range." *Id.* The Eighth Circuit has also refused to reverse a sentence which was less than the statutory minimum when the Government failed to object to the sentence in the lower court. *United States v. Posters 'N' Things Ltd.,* 969 F.2d 652, 663 (8th Cir.1992); *United States v. Filker,* 972 F.2d 240 (8th Cir.1992).

■ In light of the rule in this circuit that an appellate court will consider an issue not raised in the court below only "if the error is 'plain' *and* if [a] refusal to consider such would result in the denial of fundamental justice," *Stewart v. Hall,* 770 F.2d at 1271 (emphasis added), the First Circuit's holding in *Rodriguez* that any failure to impose at least the statutory minimum sentence must be overturned on appeal appears to be overbroad. Instead, in this circuit, review of an issue raised for the first time on appeal is subject to a two-step analysis. The Court must first determine whether the error is plain. If the error is plain, the Court must then determine whether the error results in the denial of fundamental justice.

Turning to the instant case, the Court notes that *Young* clearly holds that a sentence imposed for the violation of a crime encompassed by the Assimilative Crimes Act must fall within the minimum and maximum sentence imposed by state law. The magistrate judge, therefore, committed plain error in failing to fine Jacobs at least $1,000. Finding plain error, the Court must now determine whether refusing to correct the error would result in the denial of fundamental justice.

In so doing, the Court first notes that the Government had ample opportunity to object to the sentence imposed by the magistrate judge. Before the sentencing hearing commenced, the Government received a copy of the presentence report which indicated that a fine of at least $1,000 was required by the underlying state statute. Presentence Report ¶ 47 at 10. Moreover, during the sentencing hearing, the magistrate judge indicated that his decision not to impose this statutory minimum fine may have been in error:

I'm not going to impose a fine, and I may be wrong, but my thought on the mandatory fines … as mandated by the state, is number one, that they can mandate in state court but not in federal court, and it is completely incongruous with the—the provisions of the Sentencing Reform Act that specifically state if [sic] you've got to take into consideration one's ability to pay a fine in order to impose one, then I feel like that we should be more guided by the federal regulations, if you will, than … the state mandates. I may be wrong about that, but that's the way I look at it.

(Sentencing Tr. at 7). Even in light of the presentence report and the magistrate judge's statements, however, the Government made no recommendation as to what sentence the magistrate judge should have imposed. (Tr. at 3). Moreover, the Government did not object to the magistrate judge's summarization of the Guidelines computation, (*Id.*), and it had no questions about the form of the sentence imposed. (*Id.* at 7).

The Court also notes that Jacobs did not escape punishment for her offense. Pursuant to her sentence for second offense DUI, Jacobs must serve eighty hours of community service and enter a drug treatment and testing program. The magistrate judge also sentenced Jacobs to three years probation, and if she violates the terms of her probation Jacobs is subject to further punishment. Jacobs, therefore, was punished for the serious offense she committed. The fact that Jacobs was not punished to the full extent required by state law does not, in and of itself, result in the denial of fundamental justice. *See United States v. Posters 'N' Things,* 969 F.2d at 663 ("It was plainly an error for the district court to sentence [the defendant] be-

low the statute's minimum, but [the defendant's] sentence of 108 months (as opposed to the statute's required 120 months) does not result in a miscarriage of justice."); *Garcia–Pillado,* 898 F.2d at 39 (the fact that the sentence imposed was ten percent shorter than it should have been did not result in the denial of fundamental justice). Moreover, the magistrate judge's decision not to impose a fine was based on his finding that Jacobs "has absolutely no means to pay a fine at this time." (Sentencing Tr. at 5).[6] The Court cannot say, therefore, that his decision to impose no fine, although improper in light of *Young,* was devoid of any reasoning or contemplation.

Finally, and perhaps most importantly, "the proper administration of justice, particularly our now severely strained criminal justice system, will be unduly hampered by any rule or practice which allows sentences to be attacked on grounds raised for the first time on appeal in any but the most exceptional cases." *Filker,* 972 F.2d at 241 (8th Cir. 1992) (citing *Garcia–Pillado,* 898 F.2d at 40 (5th Cir.1990)). *Accord Stewart v. Hall,* 770 F.2d at 1671 (errors raised for the first time on appeal will be considered "in very limited circumstances"). The wisdom of this principle is amply illustrated by the instant case. If the Government had alerted the magistrate judge to his error by raising a timely objection properly supported by the *Young* decision, the magistrate judge would undoubtedly have fined Jacobs pursuant to the South Carolina statute. The Government's failure to raise that objection, however, has resulted in the expenditure of much judicial and legal time and resources, the value of which far and away exceeds the $1,000 the Government seeks by way of fine in this case.

Moreover, strict application of this principle does not result in the denial of fundamental justice. Instead, it promotes fundamental justice by requiring all litigants to be alert and fully prepared during all court proceedings. As explained by the Fifth Circuit:

> There is no reason whatever for the government to have failed to call this matter to the district court's attention while that court still had the case under its jurisdiction or to then express its dissatisfaction with the sentence. We do not minimize the necessity of all courts following the constitutional commands of Congress. But we believe that in the long run compliance will likely be enhanced by providing incentives to litigants, including the United States, to promptly call these commands to the attention of the courts at the earliest opportunity. That is indeed a premise of the almost universal and long-standing rule that claims of error may generally not be raised for the first time on appeal.

*United States v. Garcia–Pillado,* 898 F.2d at 39–40.

As stated by Justice Cardozo, "justice, though due to the accused, is due to the accuser also." *Snyder v. Massachusetts,* 291 U.S. 97, 122, 54 S.Ct. 330, 338, 78 L.Ed. 674 (1934), *overruled on other grounds, Malloy v. Hogan,* 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). Pursuant to this truism, there may be circumstances in which the imposition of a sentence that falls below the statutory minimum sentence results in the denial of fundamental justice. This, however, is simply not such a case. Despite the Government's unexplained failure to object to the sentence imposed by the magistrate judge, Jacobs did not escape punishment for the serious offense she committed. Moreover, in light of the important policy against deciding matters raised for the first time on appeal except in the most exceptional cases, the error committed by the trial court, which could easily have been corrected had the Government voiced an opinion regarding the sentence either before or during the sentencing hearing, does not result in the denial of

---

6. The magistrate judge's finding of fact that Jacobs is unable to pay a fine is binding on the Court unless it is clearly erroneous. *See United States v. Terry,* 916 F.2d 157, 160 (4th Cir.1990). The record in this case indicates that at the time of the sentencing hearing, Jacobs had not worked in nearly five months, her monthly income was only three hundred twenty dollars, she had two dependant children, and she was pregnant. The court, therefore, finds that the magistrate judge's finding that Jacobs is unable to pay a fine is not clearly erroneous and accepts that finding.

fundamental justice.[7] The Court finds, therefore, that the sentence imposed by the magistrate judge should be affirmed.

Based on the foregoing, the Court hereby ORDERS that the decision of the magistrate judge be AFFIRMED.

---

7. The Court reiterates the fact that the presentence report clearly notified the Government that the underlying state statute mandated a fine of at least $1,000. This is not, therefore, a case in which the Government was surprised by an issue it had no way of knowing might arise during the course of the sentencing hearing. The Government could have easily protected itself against the possibility that the magistrate judge might misapply the Guidelines to a crime encompassed by the Assimilative Crimes Act.